**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | CASE NO.: 2:18-cr-47 |
| v. | |
| DONALD ADAMS, | |
| Defendant. | |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Donald Adams has been indicted on two felony counts related to his alleged possession and distribution of certain controlled substances. Doc. 21. Among the charges, the Government has accused Defendant of distributing hydromorphone and fentanyl, resulting in death. Id. at 4. Defendant disputes whether certain statements he made to law enforcement officers during an interview prior to his arrest were voluntary.[1] On March 7, 2019, the Court conducted a hearing in accordance with Jackson v. Denno, 378 U.S. 368 (1964), to evaluate whether Defendant's statements were, in fact, voluntary. Doc. 78. For the reasons that follow, I **RECOMMEND** the Court find that Defendant's statements were voluntary.

### I.     Defendant's Statements

In evaluating the voluntariness of Defendant's statements, the Court considered video footage of Defendant's interview by law enforcement officers. The Government provided the Court a copy of Defendant's interview and produced that interview to Defendant during discovery. Doc. 75. The interview was admitted into evidence during the March 7, 2019 hearing, and no party contests the video's accuracy or completeness. Doc. 21. The footage

---

[1]     Defendant orally requested a Jackson-Denno hearing during a hearing on March 5, 2019, rather than filing a written motion. Doc. 77.

shows Defendant was questioned on the morning of September 27, 2018, for just under one hour, from approximately 6:15 a.m. to 7:15 a.m. Defendant was questioned by Investigator Stephan Lowrey and Officer Jeremy Stagner of the Glynn County Police Department at a Police Department facility.

The video shows that Defendant was interviewed in what appears to be a small room with a table, three chairs, and no windows. At the outset of the video, Investigator Lowrey advises Defendant that he is not under arrest and that he is free to leave at any time, though Investigator Lowrey states, "I would really advise against that." Doc. 75 at 0:04:00–0:05:00. Investigator Lowrey then proceeds to inform Defendant of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and Defendant executes a waiver acknowledging that he is aware of those rights. Id. at 0:04:00–0:05:00.

Near the beginning of the video, Investigator Lowrey states, "The moment you start lying, any cooperation you receive from [the state] is gone," and "this is your chance to give me your side of the story." Id. at 0:05:30; 0:08:00. Investigator Lowrey then begins questioning Defendant about his relationship with codefendant Makeda Atkinson, who had been previously arrested, and Atkinson's role in the death of Leann Monaghan following an overdose. Defendant then answers various questions for the remainder of his interview. Defendant states to Investigator Lowrey, "I was hooked on drugs a long time ago, and I don't do them anymore." Id. at 0:13:00. Throughout the interview, Investigator Lowrey never promises Defendant anything in exchange for his cooperation but encourages him to continue speaking and thanks him for his cooperation, stating:

> I'm glad you wanted to come and speak with us because getting your side of the story, it helps, it helps you. And instead of leaving, you know, leaving a lot left to be determined from what I'm hearing from other people, it's nice to be able to hear your side of things.

Id. at 0:13:30–0:14:00.   The video does not show that Defendant was physically threatened or restrained at any time.   During the video of the interview, Defendant does not ask for a break in questioning, for food, for water, to speak to an attorney, or to speak to anyone else.   Rather, the video shows that Defendant was questioned for approximately one hour and was free to leave the police station at any time.

During the March 7, 2019 hearing, Investigator Lowrey testified that, on the morning of the interview, he approached Defendant at the Salvation Army homeless shelter on Reynolds Street in Brunswick, Georgia, where Defendant was residing.   Investigator Lowrey requested that Defendant return with him to the police station to be questioned, and Defendant agreed. Investigator Lowrey stated he did not engage in any substantive discussion with Defendant until he reached the police station and that Defendant was not handcuffed during the drive to the police station.   During cross-examination by defense counsel, Investigator Lowrey stated he saw Defendant exit the Salvation Army, walk back inside, and then exit again a few minutes later. Investigator Lowrey also testified that the recorded interview was the only interview law enforcement conducted with Defendant, and that Defendant appeared to be alert, articulate, and unimpaired during the interview.

At the hearing, Defendant testified that, on the morning of the interrogation, Defendant noticed the presence of a police officer when he first exited the Salvation Army.   Defendant claims he was in possession of drugs (a combination of heroin and cocaine) that morning, and once he learned of police presence at shelter, he re-entered the building and snorted the drugs.[2] Defendant stated the drugs made him relaxed and gave him a feeling of not caring about the impact of his statements.   Defendant also stated he was under the influence of drugs during the

---

[2]        Defendant asserts he obtained the drugs from codefendant Atkinson.

entirety of his interview, and though he recalls his statements, he testified that he would not have made some of his statements if he had not been under the influence of drugs. During cross-examination, Defendant stated he had not done drugs for "a couple months" before the interview. Defendant testified that police did not coerce him during their questioning but insists he was under the influence of drugs at the time he was interviewed. Notably, Defendant's assertion that he consumed drugs the morning of the interview—September 27, 2018—is contrary to his sworn testimony during his bond hearing in this matter on October 24, 2018, where he testified that he last used heroin eight months prior to the date of that hearing. Doc. 19.

## II.    Legal Standard

The United States Supreme Court's holding in <u>Jackson v. Denno</u>, 378 U.S. 368 (1964), governs the voluntariness of confessions and, in pertinent part, provides:

> It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction.

378 U.S. at 376 (internal citation omitted). A confession is not voluntary under the Due Process Clause when law enforcement officials have used coercive conduct. <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986). Coercion can be mental or physical. <u>Blackburn v. Alabama</u>, 361 U.S. 199, 206 (1960); <u>Chambers v. Florida</u>, 309 U.S. 227, 237 (1940). The test for determining if a confession is the result of coercion requires a review of the totality of the circumstances. <u>Blackburn</u>, 361 U.S. at 206 (citing <u>Fikes v. Alabama</u>, 352 U.S. 191, 197 (1957)). In examining the totality of the circumstances, it must be determined whether "the statement is the product of the accused's free and rational choice." <u>Harris v. Dugger</u>, 874 F.2d 756, 761 (11th Cir. 1989). These potential circumstances include not only the crucial element of police coercion, but the

length of the interrogation, its location, and its continuity, and the defendant's maturity, education, physical condition, and mental health. These circumstances also include the failure of police to advise the defendant of his rights to remain silent and to have counsel present during custodial interrogation. <u>Withrow v. Williams</u>, 507 U.S. 680, 693–94 (1993) (internal citations omitted). "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." <u>United States v. Thompson</u>, 422 F.3d 1285, 1295–96 (11th Cir. 2005). Government coercion is a necessary predicate to a finding of involuntariness under the Fifth Amendment. However, "[a]bsent police conduct causally related to the confession, there is no basis for concluding that any state actor has deprived a criminal defendant of due process of law." <u>Id.</u> at 1296.

## III.     Defendant's Statements were Voluntary

Reviewing the testimony presented at the March 7, 2019 hearing and the recording of Defendant's interview, I find that Defendant's statements were voluntarily made. Defendant was interviewed by two officers for approximately one hour during regular morning hours. The police questioned Defendant for a relatively brief period and never threatened him with violence or promised him anything in return for his cooperation. Defendant was informed of his rights, executed a waiver acknowledging he was aware of those rights, and was told that he was free to leave at any time. Defendant never asked for counsel, expressed any physical discomfort during questioning, or requested that the interview be stopped.

Defendant asserts he was under the influence of drugs during the interview and that the influence of those drugs somehow impaired his ability to answer questions voluntarily. I do not find this testimony credible. Defendant testified at his October bond hearing that he had not

used heroin for eight months but now claims that he used heroin the morning of his September interview. Even during the September 27, 2018 interview, Defendant stated, "I don't do [drugs] anymore." More importantly, even if Defendant had consumed drugs the morning of the interview, I do not find that Defendant's purported consumption impaired him in any way that would render his statements involuntary. Defendant appeared sober and alert during the entirety of his interview. His speech was not slurred, and he had no apparent difficulty in carrying on a conversation with Investigator Lowrey for approximately one hour. Moreover, Investigator Lowrey testified that Defendant appeared to be alert, articulate, and unimpaired during the interview. To the extent that Defendant was under the influence of drugs during the interview, his drug use did not impair Defendant's ability to make rational statements, recall extensive and detailed facts, or understand the gravity of the circumstances in which he found himself. I find that the evidence presented establishes beyond any doubt that Defendant's statements were not the product of any government coercion or overreaching and, therefore, were entirely voluntary. Accordingly, I **RECOMMEND** the Court find that Defendant's statements were voluntary.

## CONCLUSION

Based on the foregoing reasons, I **RECOMMEND** the Court find that Defendant's statements were voluntary. The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 7 days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 20th day of March, 2019.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA